**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

CENTRAL FLYING SERVICE, INC.                                                    PLAINTIFF

v.                                              No. 4:13CV00330 JLH

STARNET INSURANCE COMPANY;
FLIGHTLINE, LLC; CHARTER EXPRESS
INCORPORATED; RPI AIR, INC.;
REPLACEMENT PARTS, INC.; CAL FREENEY;
PAMELA TISDALE, Individually and as Executrix
and Personal Representative of the Estate of
Don Thompson; MELISSA ANN HART, Individually
and as Executrix and Personal Representative of the
Estate of Dean L. Hart, Sr.; MICHELLE LARCHE,
Individually and on Behalf of her Minor Son
Lucien Alex Larche; JANET MAULDIN, Individually
and as Administratrix of the Estate of Mason Mauldin;
and SENTRY CASUALTY COMPANY                                                     DEFENDANTS

## OPINION AND ORDER

This is an insurance coverage dispute between Central Flying Service, Inc., and StarNet
Insurance Company. Central Flying Service commenced this action seeking a declaration that it was
entitled to a defense and indemnity for claims against it as a result of an airplane crash. The crash
tragically killed everyone onboard and led to three wrongful death actions against Central Flying
Service, for which StarNet refused to provide a defense or indemnification. Central Flying Service
subsequently filed a second amended complaint to add as defendants the plaintiffs in those
underlying tort actions. Central Flying Service then settled the underlying tort actions, which meant
that the request for declaratory relief was no longer necessary, so it filed a third amended complaint
to drop the claim for declaratory relief and to assert claims for breach of contract, breach of fiduciary
duty, bad faith, negligence, and punitive damages. StarNet has moved to dismiss the claims for
breach of fiduciary duty and negligence pursuant to Federal Rule of Civil Procedure 12(b)(6). For
the following reasons, the motion to dismiss is granted.

StarNet issued to Central Flying Service an insurance policy that provided coverage for liability arising from bodily injuries and property damage in connection with a 1998 Beech Bonanza A36 aircraft owned by Central Flying Service, subject to several exclusions.  On January 24, 2013, this aircraft, while flown by an employee of Central Flying Service, crashed near Monroe, Louisiana.  Three wrongful death actions were filed against Central Flying Service in connection with the crash, but StarNet refused to defend and indemnify Central Flying Service and denied its claim for property damage to the aircraft, asserting that certain exclusions in the policy precluded coverage.  Central Flying Service and the wrongful-death plaintiffs later informed StarNet that settlement negotiations were ongoing and if StarNet contributed its policy limits, the parties would have an opportunity to settle.  StarNet refused to participate in settlement negotiations.  According to the second amended complaint, Central Flying Service sold the majority of its assets to a third party at below market value and used the proceeds to settle the three wrongful-death actions.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  The court must accept as true all of the factual allegations contained in the complaint, *Twombly*, 550 U.S. at 572, 127 S. Ct. at 1975, and must draw all reasonable inferences in favor of the nonmoving party.  *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014).  The complaint must contain more than labels, conclusions, or

a formulaic recitation of the elements of a cause of action, which means that the court is "not bound

to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127

S. Ct. at 1965.

StarNet's first argument is that it did not owe a fiduciary duty to Central Flying Service.

Document #82 at 3. "A fiduciary relationship exists between two persons, one of whom has a duty

to act for the benefit of another and owes the other duties of good faith, trust, confidence, and

candor."  1 HOWARD W. BRILL & CHRISTIAN H. BRILL, ARK. LAW OF DAMAGES § 15:3 (6th ed.

2015).  Certain relationships, such as the attorney-client relationship and the trustee-beneficiary

relationship, by their nature are fiduciary relationships.  *See Cole v. Laws*, 349 Ark. 177, 185, 76

S.W.3d 878, 883 (2002); *Hosey v. Burgess*, 319 Ark. 183, 189, 890 S.W.2d 262, 265 (1995).  A

fiduciary's obligations include a duty of loyalty, a duty to deal impartially with the beneficiary, and

a duty to exercise reasonable care.  *See Sexton Law Firm, P.A. v. Milligan*, 329 Ark. 285, 298, 948

S.W.2d 388, 395 (1997).  These obligations are not extinguished by contract:

> [R]egardless of the express terms of an agreement, a fiduciary may be held liable for
> conduct that does not meet the requisite standards of fair dealing, good faith,
> honesty, and loyalty.  The guiding principle of the fiduciary relationship is that self-
> dealing, absent the consent of the other party to the relationship, is strictly
> proscribed.

*Id*.  A fiduciary must not engage in conduct that conflicts with the interests of the person to whom

the fiduciary duty is owed.  *Berry v. Saline Mem'l Hosp.*, 322 Ark. 182, 187, 907 S.W.2d 736, 739

(1995).  Whether a fiduciary relationship exists is a question of law.  *Long v. Lampton*, 324 Ark.

511, 520, 922 S.W.2d 692, 698 (1996).

The third amended complaint alleges:

25.  StarNet had a fiduciary duty to its insured – Central Flying Service which
included an obligation to attempt to settle claims to protect its insured.  StarNet
refused to settle claims to protect its insured.  StarNet refused to defend its insured

and further failed to attempt to settle the claims.  Therefore, Central Flying Service
was forced to attempt to settle the claims.

\* \* \*

39.  StarNet was the insurer for Central Flying Services and as an insurer StarNet
was in a fiduciary relationship with it[s] insured.

40.  The contract between the parties does not prevent or limit the existence of the
fiduciary duty which arises from the relationship itself.

Document #77 at 4, ¶25, 6 ¶¶39-40.  Central Flying Service alleges that StarNet breached its

fiduciary duty by putting its own interests above those of its insured, conducting an inadequate and

incomplete investigation, focusing its investigation on finding a basis for denying coverage, refusing

to defend its insured, and refusing to settle the claims against its insured.  *Id*. at 7, ¶¶ 42-45.  The

policy provides that StarNet "may make such investigation and settlements of any claim or suit as

it deems expedient . . . ."  Document #2 at 12.  Citing this provision of the insurance contract,

Central Flying Service argues that StarNet became a fiduciary when it acquired contractually the

right to investigate and settle claims against its insured.  Document #87 at 2-3.

Both parties rely on *S. Farm Bureau Cas. Ins. Co. v. Parker*, 232 Ark. 841, 341 S.W.2d 36

(1960).  There, Parker sued his automobile liability insurer, Southern Farm Bureau, for failing to

settle a lawsuit against him that could have been settled within policy limits.  232 Ark. at 841, 341

S.W.2d at 37.  Southern Farm Bureau defended Parker in the lawsuit, which resulted in a $12,500

jury verdict and judgment in favor of the plaintiff.  *Id*.  Parker subsequently retained private counsel

and settled the judgment for $6,500.  *Id*.  Southern Farm Bureau paid $5,000 – the policy limit – and

Parker paid the remaining $1,500.  *Id*.  Then, Parker sued Southern Farm Bureau for negligence and

bad faith based on Southern Farm Bureau's refusal of an offer by the plaintiff to settle the lawsuit

within the policy limits for $4,000, despite Parker's insistence that the offer be accepted.  *Id*.

Although Parker asserted claims for negligence and bad faith, the trial court instructed the jury only

4

on the negligence claim. *Id*. at 846, 341 S.W.2d at 39. The jury found that Southern Farm Bureau was negligent and awarded damages of $1,500, after which Southern Farm Bureau appealed. *Id*. at 841, 341 S.W.2d at 37. On appeal, Southern Farm Bureau argued that the trial court erred by instructing on negligence rather than bad faith. *Id*. at 843, 341 S.W.2d at 38. The Arkansas Supreme Court held that the trial court did not err by instructing on negligence because Southern Farm Bureau owed Parker, its insured, "the duty to act in good faith *and also* the duty to act without negligence." *Id*. at 847-48, 341 S.W.2d at 40.

Although the issue on appeal was whether an insured can recover from an insurer for negligence in failure to settle a claim, the court *in dicta* discussed an insurance company's duty to exercise good faith toward the insured when deciding whether to settle, quoting the Tenth Circuit:

> 'When a liability insurance company by the terms of its policy obtains from the insured a power, irrevocable during the continuance of its liability under the policy, to determine whether an offer of compromise of a claim shall be accepted or rejected, it creates a fiduciary relationship between it and the insured with the resulting duties that grow out of such a relationship. Under policies like those here involved, the insurer and the insured owe to each other the duty to exercise the utmost good faith. While the insurance company, in determining whether to accept or reject an offer of compromise, may properly give consideration to its own interests, it must, in good faith, give at least equal consideration to the interests of the insured and if it fails so to do its acts in bad faith.'

*Id*. at 848-49, 341 S.W.2d at 41 (quoting *American Fidelity & Cas. Co. v. Nichols*, 173 F.2d 830, 832 (10th Cir. 1949)). Though the Tenth Circuit used the phrase "fiduciary relationship" in its discussion of an insurer's duty to act in good faith, it describes something less than a fiduciary duty by stating that the insurer must "give at least *equal* consideration to the interests of the insured . . . ." *Nichols*, 173 F.2d at 832 (emphasis added). In a fiduciary relationship, the fiduciary has a duty to act primarily for the benefit of the other; the fiduciary may not give "equal consideration" to its

interests and the interests of those to whom a fiduciary duty is owed.  Nevertheless, the Arkansas

Supreme Court used the Tenth Circuit's language in its discussion of the good faith issue:

> In the case at bar the policy which the Insurance Company issued to Parker provided
> that the Insurance Company would defend any suit – "but the company shall have
> the right to make such investigation, negotiation, and settlement of any claim or suit
> as may be deemed expedient by the company . . ."  By this language the Insurance
> Company became a fiduciary to act, not only for its own interest, but also for the best
> interest of Parker.

*Parker*, 232 Ark. at 849, 341 S.W.2d at 41.  Because *Parker* recognizes that an insurer that defends

and controls settlement must act "not only for its own interest, but also for the best interest of [the

insured]," the insurer is not a true fiduciary.  *See Bernhard v. Farmers Ins. Exchange*, 915 P.2d

1285, 1288-90 (Colo. 1996) (the duty of an insurer that controls the defense is "quasi-fiduciary" in

nature, not a true fiduciary duty); John H. Bauman, *Emotional Distress Damages and the Tort of

Insurance Bad Faith*, 46 DRAKE L. REV. 717, 735 n.129 (1998) (the duty is "fiduciary-like" because

courts permit the insurer to consult its own interests as well as the insured's).  The issue in *Parker*

was whether the insurer was required to prove bad faith, not whether the insurer was a fiduciary, and

the context of this discussion was the insurer's obligation to act in good faith.  It appears that when

the Supreme Court stated that the insurer became a fiduciary, it meant that the insurer had a duty to

act in good faith.  *Cf. Bailey v. Allstate Ins. Co.*, 844 P.2d 1336, 1339 (Colo. App. 1992) (because

an insurer has a right to protect its own interests along with those of the insured, the relationship is

not a fiduciary one, although each party owes the other a duty of good faith and fair dealing).

The Arkansas Court of Appeals acknowledged *Parker* in *Employers Ins. of Wausau v. Didion

Mid-South Corp.*, 65 Ark. App. 201, 987 S.W.2d 745 (1999).  Unlike *Parker*, *Employers Ins. of

*Wausau* involved a tort claim for breach of fiduciary duty.[1]  *Id*. at 206, 987 S.W.2d at 747.  The insurance company, arguing that it did not owe a fiduciary duty to its insured, cited *Parker* in acknowledging that an insurance company may owe a fiduciary duty in limited circumstances.  *Id*. at 205, 987 S.W.2d at 747.  The Court of Appeals found that there was sufficient evidence to uphold a jury's finding that the insurance company breached its duty to the insured, stating:

> Therefore, *without deciding the issue of whether a fiduciary duty always exists between an insurer and its insured*, there was sufficient evidence present under the facts of this case to support the finding of the jury that [the insurer] breached its fiduciary duty to [the insured]. [The insurer] assumed no risk. It was reimbursed for all costs and payments made for [the insured's] workers' compensation claims. Plus, it received a 20% to 30% premium above that total cost. The no-risk posture of [the insurer] eliminated any reason or need for [the insurer] to pursue any self-protective measures and left [the insurer] with only one duty—the duty to act in the best interest of its insured. This situation is unlike those in which insurers issue policies that assume a monetary risk, resulting in competing interests to protect.

*Id*. at 207, 987 S.W.2d at 748 (emphasis added).  The Eighth Circuit, applying Arkansas law in *Hortica-Florists' Mutual Insurance Company v. Pittman Nursery Corporation*, discussed the justification provided by the Arkansas Court of Appeals for its decision to uphold a jury verdict in favor of the insured on a breach of fiduciary duty claim:

> Although at least one court has questioned whether a fiduciary duty exists in cases where the insurance company assumes a monetary risk and the resulting competing interests between the policyholder and its own bottom line, [*Employers Ins. of Wausau*], the holding in *Parker* remains good law.  It therefore appears [the insurer] owed [the insured] a duty to act as a fiduciary.

729 F.3d 846, 858 (8th Cir. 2013).  In *Pittman Nursery*, the insured alleged that the insurer, which had been ordered by the court to defend claims against its insured, manipulated its provided defense in order to escape its obligation under the insurance policies.  *Id*. at 855.  Citing *Parker*, the Eighth

---

[1] The insurance company argued on appeal that *Parker* did not support the court's adoption of a tort claim for breach of fiduciary duty against insurance companies, but it had not raised the issue at the trial level so the court did not reach the issue.  *Id*. at 205-06, 987 S.W.2d at 747.

Circuit said, "[w]hen the terms of an insurance policy give the insurer the right 'to determine whether an offer of compromise of a claim shall be accepted or rejected, it creates a fiduciary relationship between it and the insured with the resulting duties that grow out of such a relationship.'" *Pittman Nursery*, 729 F.3d at 858 (quoting *Parker*, 232 Ark. at 849, 341 S.W.2d at 41).

A significant factual difference distinguishes this case from *Parker*, *Nichols* (upon which *Parker* relies), *Employers Ins. of Wausau*, and *Pittman Nursery*.  In those cases, either the insurer had assumed responsibility for the defense of the insured or a court had declared that the insurer had a contractual duty to defend the insured.  *Parker*, 323 Ark. at 843-44, 341 S.W.2d at 38; *Nichols*, 173 F.2d at 831; *Employers Ins. of Wausau*, 65 Ark. App. at 204, 987 S.W.2d at 747; *Pittman Nursery*, 729 F.3d at 850.  In contrast, Central Flying Service denied coverage, refused to defend and refused to participate in settlement negotiations.  Document #77 at 3, ¶18.  And while Central Flying Service sought a declaration that StarNet had a duty to defend, it settled the underlying actions before obtaining a ruling.  *Id*. at 4-5, ¶26.

The Seventh Circuit, applying Indiana law, described the circumstances giving rise to a fiduciary relationship between an insurer and its insured:

> Under third party liability coverage when the insured is sued by a third party, the insurance company takes over the defense of the suit and the insured cannot settle the matter without the permission of the insurer.  *It is this control of the litigation by the insurer coupled with differing levels of exposure to economic loss which gives rise to the 'fiduciary' nature of the insurer's duty . . . .*

*Craft v. Econ. Fire & Cas. Co.*, 572 F.2d 565, 569 (7th Cir. 1978) (emphasis added).  *See also St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 407 (Minn. Ct. App. 2007) (an insurer is not a fiduciary until it becomes obligated to defend and assumes control of the defense of the insured); *Farris v. U.S. Fidelity and Guaranty Co.*, 587 P.2d 1015, 1019 n.2 (Or. 1978) ("Far from

8

standing for the proposition that the fiduciary relationship arises from the right to control, if the cases [cited by the insured to argue that a fiduciary duty is owed when the insurer does not undertake the defense of its insured] indicate anything it is that, to the contrary, it arises from the exercise of the defense provided for under the policy and thus from entering upon a fiduciary relationship."); John H. Bauman, *Emotional Distress Damages and the Tort of Insurance Bad Faith*, 46 DRAKE L. REV. 717, 735 (1998) ("The courts . . . began to view the insurer as assuming a fiduciary-like duty when it took control of the litigation, and so began to require the company to give more consideration to the insured's interests.").

The conclusion that under Arkansas law the act that gives rise to a heightened duty is assuming control of the litigation is confirmed by the manner in which the Arkansas Supreme Court in *Parker* distinguished *Home Indemnity Co. v. Snowden*, 223 Ark. 64, 264 S.W.2d 642 (1954):

> Appellant complains bitterly of the failure of the court to give its instructions on the "bad faith" theory; and says that in *Home Indemnity Co. v. Snowden* . . . we approved instructions that contain the idea of bad faith. We are here considering a factual situation entirely different from that in *Home Indemnity Co. v. Snowden*. There, the insurance company refused to admit any unconditional liability; and the insured settled with the injured parties in advance of trial and sued the insurance company for the amount of the settlement. Here, the Insurance Company all the time admitted to its insured full liability to the extent of the coverage, but failed to effect settlement within such limits.

*Parker*, 232 Ark. at 848, 341 S.W.2d at 40. In *Snowden*, the insurance company denied coverage and refused to participate in a settlement. 223 Ark. at 68, 264 S.W.2d at 645. This case is more akin to *Snowden*, where the insurer denied coverage, than to *Parker*, where the insurer at all times admitted coverage, and, based on that admission, assumed control of the defense and the settlement negotiations.

Here, StarNet denied coverage, denied that it had a duty to defend, and refused to participate in settlement negotiations. As a result, Central Flying Service hired its own counsel, conducted its

own investigation, and participated independently in settlement negotiations.  By declining to defend

and indemnify Central Flying Service, StarNet may have violated its contractual obligations under

the insurance policy, and it may have committed bad faith[2] – StarNet has not moved to dismiss those

claims – but because StarNet had not assumed the defense and taken control of settlement

negotiations, it was not in a fiduciary relationship with Central Flying Service.

Whenever an insured presents a claim to a liability insurer, the insurer's initial decisions

must be, first, whether it may have coverage and therefore a duty to defend and, second, whether it

actually has coverage and therefore a duty to indemnify.[3]  If a liability insurer had a fiduciary duty

to the insured in making those decisions, it could never decline to defend or indemnify because, by

definition, a fiduciary has an obligation to subordinate its own interests to the interests of the one

to whom a fiduciary duty is owed.  *Cf. Miller v. ACE USA*, 261 F. Supp. 2d 1130, 1141 (D. Minn.

2003) ("Where the insurer is not yet acting as advocate for the insured in dealing with a third party,

---

[2] A recent law review article explains:

There are two general types of bad-faith claims against insurers, which are known
by reference to the party bringing the action. Third-party bad-faith claims involve
some act taken by an insurer while in a fiduciary relationship with the insured with
respect to a third party, such as the failure to settle a meritorious claim brought by
the third party. First-party bad-faith claims involve breach of the covenant of good
faith and fair dealing inherent in every contract between a policyholder and an
insurer.

Nathan Price Chaney, *A Survey of Bad Faith Insurance Tort Cases in Arkansas*, 64 ARK. L. REV.
853, 855-56 (2011).  "For first-party bad-faith claims, the insurer breaches the duty of good faith
and fair dealing, while in third-party claims, the insurer breaches a fiduciary duty to act in the
insured's best interests."  *Id.* at 860.

[3] The duty to defend is broader than the duty to indemnify and arises when there is a
possibility that the claim may be covered. *Watkins v. S. Farm Bureau Cas. Ins. Co.*, 2009 Ark. App.
693, 7, 370 S.W.3d 848, 853.

the conflict of interest inherent in settlement negotiations and creating the fiduciary duty is not at issue."). Count IV fails as a matter of law.

StarNet's second argument is that negligent performance of an insurance contract is not a cognizable tort under Arkansas law. Document #82 at 6. Central Flying Service bases its negligence claim on allegations that StarNet failed to provide a defense or indemnification, failed to investigate the crash fully and thoroughly, failed to settle the claim within policy limits though it had the opportunity,[4] and delayed its coverage decisions. Document #77 at 10-11, ¶69, ¶¶71-78. Arkansas courts do not recognize a tort for mere nonperformance by an insurance carrier. *Farm Bureau Ins. Co. of Ark., Inc. v. Running M Farms, Inc.*, 366 Ark. 480, 491, 237 S.W.3d 32, 40 (2006) (stating that "Arkansas has never recognized the tort of failure to act (nonfeasance) apart from the tort of bad faith."). "Prosser has pointed out that an action in tort cannot ordinarily be based upon a breach of contract which amounts to mere nonfeasance, which means not doing the thing at all, as distinguished from misfeasance, which means doing it improperly." *Id.* (quoting *Findley v. Time Ins. Co.*, 264 Ark. 647, 653, 573 S.W.2d 908, 911 (1978)).

In *Running M Farms*, an insured brought an action against its insurer alleging claims for breach of contract by failing to pay a claim, negligent performance of a contract, and tortious interference with a business expectancy. 366 Ark. at 482, 237 S.W.3d at 34. The insured purchased crop-hail insurance from the insurer for wheat crops. *Id.* at 483, 237 S.W.3d at 34. When a storm damaged the wheat crops, the insured reported the damage but its insurer responded that there was

---

[4] While the Arkansas Supreme Court recognized a cause of action for negligence based on the failure by an insurer to settle a claim within policy limits, as discussed previously in the context of a cause of action for breach of fiduciary duty, such a cause of action arises only when the insurer assumes control of settlement negotiations and then unreasonably fails to settle the claim. *Parker*, 232 Ark. at 848-49, 341 S.W. at 40-41.

no coverage under the policy. *Id*. The insured requested a reinspection and the insurer ultimately offered a settlement of the claim. *Id*. at 483, 237 S.W.3d at 35. The insured based its negligence claim on allegations that agents of the insurer visited the farm three times but refused to meet the insured's demands and that it was foreseeable to the insurer that failure to timely pay the claim would harm the insured. *Id*. at 492, 237 S.W.3d at 41. While the insured characterized this conduct as misfeasance, the Supreme Court of Arkansas characterized it as nonfeasance. *Id*. The court held that while the failure by the insurer to pay the insured's claims may constitute a breach of the insurance contract, such a failure is not actionable in tort. *Id*. "In sum, the mere refusal to pay a disputed insurance claim cannot constitute misfeasance, not to mention wanton or malicious conduct, when there is an actual controversy with respect to liability." *Id*. at 493, 237 S.W.3d at 42.

Central Flying Service argues that, unlike the insured in *Running M Farms*, its negligence claim is based on conduct that constitutes misfeasance, rather than nonfeasance because "StarNet negligently conducted duties it undertook." Document #87 at 6. The duties to which Central Flying Service refers are duties that arose from the insurance contract: "Pursuant to the policy of insurance StarNet issued to Central Flying Service, StarNet was contractually obligated to defend and indemnify plaintiff in connection with each of the claims made in the underlying actions . . . ." Document #77 at 5, ¶30. The contract also provides that StarNet may make investigation and settlements of any claim. Document #2 at 12. The alleged failure by StarNet to exercise its contractual duties in a manner agreeable to Central Flying Service – including "delaying" its decision whether to provide coverage – is nonfeasance. *See, e.g.*, *Findley*, 264 Ark. at 653, 573 S.W.2d at 911 ("Paragraphs A, B, and C, and D merely allege that the defendant has failed to explain, failed to investigate, and failed to contact the plaintiff or her physician. Such inaction does not give rise to a cause of action in tort."). *See also Chicago Title Ins. Co. v. Ark. Riverview Dev.,*

12

*LLC*, 573 F. Supp. 2d 1152, 1159 (E.D. Ark. 2008) ("[The insured] is arguing that [the insurer] negligently performed its duties under the insurance contract, but the Supreme Court of Arkansas has held that negligent performance of an insurance contract is not a tort in Arkansas"). "Allegations of contractual nonfeasance do not give rise to claims for negligence in tort under Arkansas law." *GeoVera Specialty Ins. Co. v. Graham Rogers, Inc.*, 636 F.3d 445, 451 (8th Cir. 2011). Therefore, Count VI fails as a matter of law.

## CONCLUSION

For the foregoing reasons, StarNet's motion to dismiss is GRANTED. Document #81. Counts IV and VI of the third amended complaint are dismissed without prejudice.

IT IS SO ORDERED this 3rd day of December, 2015.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE